IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:19-CR-5-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RONALD DAVID OUTLAW, ) | |
| ) | |
| Defendant. ) | |

On May 17, 2021, Ronald David Outlaw ("Outlaw" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 52]. That same day, the court appointed counsel for Outlaw pursuant to standing order 19-SO-3 [D.E. 53]. On March 11, 2022, Outlaw, through counsel, filed a memorandum in support [D.E. 57] and attached an exhibit [D.E. 58]. On March 31, 2022, the government responded in opposition [D.E. 63] and attached an exhibit [D.E. 64]. On April 8, 2022, Outlaw replied [D.E. 66]. As explained below, the court denies Outlaw's motion.

I.

On January 30, 2020, pursuant to a written plea agreement, Outlaw pleaded guilty to being a felon in possession of a firearm (count one) and possession with intent to distribute a quantity of marijuana (count two). See [D.E. 33, 35]. On July 31, 2020, the court held Outlaw's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 44]; [D.E. 48]. The court calculated Outlaw's total offense level to be 23, his criminal history category to be III, and his advisory guideline range to be 57 to 71

months' imprisonment. See PSR ¶¶ 53, 55. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Outlaw to 60 months' imprisonment on count one and 60 months' concurrent imprisonment on count two for a total of 60 months' imprisonment. See [D.E. 48]; [D.E. 49] 3. Outlaw did not appeal.

On May 17, 2021, Outlaw moved for compassionate release. See [D.E. 52]. The government opposes the motion. See [D.E. 63].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th

2

126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10

3

years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Outlaw applied to his warden for compassionate release on March 29, 2021, and again, through counsel, on January 24, 2022. See [D.E. 57] 2. Outlaw received no response, more than 30 days lapsed before Outlaw moved for compassionate release, and the government has not invoked section 3582(c)(1)(A)'s exhaustion requirements. See id. at 2–3; [D.E. 63]. Therefore, the court addresses Outlaw's motion on the merits. See Muhammad, 16 F.4th at 130.

Outlaw seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his medical conditions (sarcoidosis and asthma and having recovered from COVID-19), his time served, his release plan, and his supportive family. See [D.E. 52]; [D.E. 57] 4–7; [D.E. 58]; [D.E. 66] 2–3.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Outlaw has sarcoidosis and asthma and argues his medical conditions put him at heightened risk of serious infection from COVID-19. See [D.E. 52]; [D.E. 57] 4–6; [D.E. 66] 2–3; [D.E. 58] 59–61, 71. However, Outlaw refused a COVID-19 vaccine on March 19, 2021, and January 19, 2022. See [D.E. 58] 66; [D.E. 64] 4–5. The vaccine would provide protection. See, e.g., United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022)

4

(unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Outlaw has not disclosed to the court any religious or medical reason why he cannot receive or benefit from a COVID-19 vaccine. See Lemons, 15 F.4th at 751 (noting that "if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by" granting compassionate release); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) (explaining that the defendant's failure to be vaccinated was not an extraordinary and compelling reason justifying compassionate release because he "has never contended that he is medically unable to receive or benefit from the available vaccines"). "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an

5

'extraordinary and compelling' justification for release. The risk is self-incurred." Broadfield, 5 F.4th at 803; see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished); Lemons, 15 F.4th at 751 ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."); Hald, 8 F.4th at 936 n.2 (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release); Baeza-Vargas, 532 F. Supp. 3d at 843–44 (collecting cases that ruled "that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances"); United States v. McBride, No. 5:19-CR-7, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (noting that even if the defendant's medical condition qualified as an extraordinary and compelling reason for granting compassionate release, "it does not qualify as such in this instance. Defendant rejected the COVID-19 vaccine. . . . Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished).

Notably, Outlaw had COVID-19 in January 2021 and recovered fully. See [D.E. 58] 16, 60, 87–88. Outlaw's natural antibodies provide protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021) (discussing natural immunity as a result of recovering from COVID-19). Additionally, the wide availability of COVID-19 vaccines greatly diminishes the risk

6

to Outlaw from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. And the availability of COVID-19 vaccines allows Outlaw to reduce his risk should he so choose. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Broadfield, 5 F.4th at 803. Other than the risk from COVID-19, Outlaw does not argue that the BOP is not providing needed treatment for his medical conditions or that he is unable to manage his medical conditions while incarcerated. See [D.E. 52, 57, 66]. Therefore, reducing Outlaw's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Outlaw's medical conditions, his time served, his release plan, and his supportive family together are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Outlaw's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Outlaw is 37 years old and is incarcerated for being a felon in possession of a firearm (count one) and possession with intent to distribute a quantity of marijuana (count two).[1] See PSR ¶¶ 1–10.

---

[1] Medical records from the Bureau of Prisons state that Outlaw was born on May 8, 1983, and is 39 years old. See [D.E. 58] 2. The PSR lists Outlaw's date of birth as May 3, 1985. See PSR at 2.

7

Outlaw possessed with the intent to distribute 96 grams of marijuana. See PSR ¶ 9. Despite being a convicted felon, Outlaw possessed a stolen 9mm handgun. See id. Outlaw's adult criminal history includes violent and dangerous drug and weapon offenses. See id. ¶¶ 8–9. In 2005, Outlaw led police on a high-speed chase, striking multiple vehicles, injuring two civilians, and causing approximately $7,000 in damages. See id. Outlaw received felony convictions in the Superior Court of the District of Columbia for fleeing a law enforcement officer, assault on a police officer, assault with a dangerous weapon (three counts), and destruction of property over $200 (two counts). See id. Outlaw also received a misdemeanor conviction for possession of marijuana. See id. While incarcerated, Outlaw incurred 12 infractions for fighting, stealing, refusing to obey orders, and other misconduct. See id.; [D.E. 63-1]. Outlaw has a similarly poor record on supervision, having violated his parole four times before it was revoked. See PSR ¶ 16. During his current incarceration, Outlaw incurred an infraction in 2021 for possessing a hazardous tool. See [D.E. 63-1] 1. Outlaw has not provided the court with any other information on his post-sentencing conduct. Cf. Pepper, 562 U.S. at 480–81.

The court must balance Outlaw's poor performance in federal custody, his serious criminal conduct, his serious and violent criminal history, his history of poor performance on parole, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Outlaw's potential re-exposure to COVID-19, his medical conditions, his time served, his rehabilitative efforts, and his release plan. Outlaw has a release plan that includes living with family members in Aulander, North Carolina. See [D.E. 52] 1; [D.E. 57] 7; [D.E. 66] 3. The court recognizes Outlaw has a supportive family. See [D.E. 57] 7. Having considered the

8

entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Outlaw's arguments, the government's persuasive response, the need to punish Outlaw for his serious criminal behavior, to incapacitate Outlaw, to promote respect for the law, to deter others, and to protect society, the court denies Outlaw's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

## III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 52].

SO ORDERED. This _15_ day of September, 2022.

JAMES C. DEVER III
United States District Judge